IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

JOSHUA CAIN FIELDS )
)
    Plaintiff, )
)
v. ) Case No. CIV-23-183-STE
)
KILOLO KIJAKAZI, )
Acting Commissioner of the )
Social Security Administration, )
)
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

I.    **PROCEDURAL BACKGROUND**

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge

(ALJ) issued a partially unfavorable decision. (TR. 22-34).[1] On review, the Appeals Council denied Plaintiff's request for review. (TR. 6-8). Thus, the decision of the ALJ became the final decision of the Commissioner for purposes of the instant appeal.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 7, 2021, the application date. (TR. 24). At step two, the ALJ determined Mr. Fields suffered from the following severe impairments: degenerative disc disease/arthritis; seizure disorder; chronic pulmonary heart disease; depressive/bipolar disorder; PTSD; substance addiction disorder in remission; and cancer of the appendix and colon. (TR. 24-25). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 25).

At step four, the ALJ concluded that prior to December 29, 2021, Mr. Fields retained the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 416.967(b) except with frequent grasping bilaterally; with avoidance of even moderate exposure to dusts, gases, odors, fumes, other pulmonary irritants, and hazards such as open flames, unprotected heights, and dangerous moving machinery; and he is also limited to unskilled work, which is simple, repetitive, routine, and where only one or two-step, non-detailed tasks are required; his supervision must

---

[1] Mr. Fields protectively filed an application for supplemental security benefits on January 7, 2021, alleging disability since July 1, 2020. (TR. 22). Ultimately, the ALJ concluded that Mr. Fields became disabled beginning December 29, 2021 and continuing through August 24, 2022, the date of the decision, but that he was not disabled prior to December 29, 2021. *See* TR. 33. The findings discussed in this Memorandum opinion relate only to the unfavorable portion of the administrative decision.

be simple, clear, tactful and supportive; he is capable of only occasional interpersonal contact with supervisors and coworkers; he will do best in a well-spaced work setting with his own work area, or, where he can frequently work alone; he must not be required to work at fast-paced production line speeds; he will need regular workbreaks every 2 hours, as normally allowed in competitive work; he should have only occasional, well-explained workplace changes; and he should have no contact with the general public.

(TR. 27).

At step four, the ALJ concluded that Plaintiff had no past relevant work. (TR. 32). Thus, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 67-68). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 69). At step five, the ALJ adopted the VE's testimony and concluded that prior to December 29, 2021, Mr. Fields was not disabled based on his ability to perform the identified jobs. (TR. 32-34).

### III.   ISSUES PRESENTED

On appeal, Mr. Fields alleges error: (1) at step five and (2) in the ALJ's evaluation of Plaintiff's obesity (ECF Nos. 7:4-14).

### IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct.

1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V.     ERROR AT STEP FIVE

As stated, the ALJ concluded that Plaintiff could perform unskilled jobs which the ALJ defined as work "which is simple, repetitive, routine, and where only one or two-step, non-detailed tasks are required." (TR. 27). With this RFC, the ALJ concluded that Plaintiff was not disabled at step five, based on his ability to perform the following jobs in the national economy: (1) Price Marker, DOT #209.587-034; (2) Router, DOT #222.687-022; and (3) Coin Machine Collector, DOT #292.687-010. (TR. 32-33). Mr. Fields presents two alternate theories for reversal: (1) that an unresolved conflict exists between the RFC and the reasoning level required in all three jobs; and (2) the RFC conflicts with the "Price Marker" job and the remaining jobs do not qualify as a "significant number" to constitute substantial evidence at step five. (ECF No. 7:4-11). The Court agrees with Plaintiff's first premise, obviating further discussion of Mr. Fields' alternate theory.

The DOT defines occupations, in part, by the "reasoning level" required to perform the job. Reasoning levels describe a job's requirements regarding understanding

4

instructions and dealing with variables. These levels range from one to six, with one being the simplest and six the most complex. Reasoning level two requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations." DOT, Appendix C, Components of the Definition Trailer, 1991 WL 688702.

As noted by Plaintiff, all three jobs the ALJ relied on at step five require reasoning level two. *See* DOT #209.587-034; DOT #222.687-022; DOT #292.687-010; and TR. 32-33. As such, an obvious conflict exists between the RFC which allows Plaintiff to work in jobs "where only one or two-step, **non-detailed** tasks are required" and the jobs relied on at step five which require the ability to "[a]pply commonsense understanding to **carry out detailed . . . instructions**." (TR. 27) (emphasis added). As a result, the ALJ had an affirmative duty to resolve the conflict or obtain an explanation for the same before relying on the VE's testimony at step five. *Haddock v. Apfel,* 196 F.3d 1084 (10th Cir. 1999). Because the ALJ failed to resolve the conflict, reversal is warranted. *Id.*

In response, the Commissioner argues: (1) no conflict existed because the occupations identified by the VE and relied on by the ALJ "were all unskilled SVP 2 occupations" and (2) even if a conflict had existed, it was "appropriately resolved" because the ALJ relied on the VE's testimony that no conflict existed. (ECF No. 11:8-9). Neither argument is persuasive.

In support of her first argument, the Commissioner cites unpublished cases which relate a GED reasoning level to an individual's educational background. *See* ECF No. 11:8

(citing *Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013) and *Mounts v. Astrue*, 479 F. App'x 860, 868 (10th Cir. 2012)). This Court has repeatedly rejected this argument when offered by the Commissioner in previous similar cases. *See, e.g., Wilson v. Saul*, No. CIV-18-1185-F, 2019 WL 6337444, at *6 (W.D. Okla. Oct. 18, 2019), *adopted*, 2019 WL 6329363 (W.D. Okla. Nov. 26, 2019); *Stevens v. Comm'r of Soc. Sec.*, No. CIV-18-1129-SM, 2019 WL 2476750 (W.D. Okla. June 13, 2019); *Collins v. Comm'r of Soc. Sec. Admin.*, No. CIV-17-018-HE, 2017 WL 4204036, at *4 (W.D. Okla. Sept. 21, 2017); *Paddelty v. Colvin*, No. CIV-14-891-D, 2016 WL 3647697, at *3 (W.D. Okla. July 1, 2016); *Clark v. Colvin*, 2016 WL 1171153, at *6 (W.D. Okla. Feb. 26, 2016), *adopted,* 2016 WL 1178807 (W.D. Okla. Mar. 23, 2016).

In support of her second argument, that the VE's testimony regarding a lack of conflict provides substantial evidence to support the ALJ's decision, Ms. Kijakazi relies on SSR 04-p as the controlling authority regarding the ALJ's duty to resolve conflicts between the DOT and VE testimony. (ECF No. 11:8-9). Indeed, SSR 00-4p places on the ALJ an "affirmative responsibility to ask about any possible conflict between [the] VE . . . evidence and information provided in the DOT." SSR 04-p, 2000 WL 1898704, at *4 (Dec. 4, 2000). Ms. Kijakazi argues that the ALJ discharged her duty under SSR-04 because "[h]ere, the vocational expert stated that her testimony was consistent with the DOT, . . . supplemented by her education and experience." (ECF No. 11:8). According to Defendant, because "[t]he ALJ accepted the vocational expert's testimony and determined that it was consistent with the DOT . . . any conflict that arguably existed

was appropriately resolved." *Id.* (internal citation omitted). The Court rejects this argument.

In *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005), the Tenth Circuit focused on the VE's failure to acknowledge and explain a discrepancy between testimony that the plaintiff could perform certain jobs which required a certain reasoning level and the DOT. *See Hackett*, 395 F.3d at 1175 ("[T]here is no indication in the record that the VE expressly acknowledged a conflict with the DOT or that he offered any explanation for the conflict."). Here, like in *Hackett*, neither the VE nor the ALJ acknowledged or explained the discrepancy between the VE testimony and the DOT as it related to Mr. Fields' ability to perform work "which is simple, repetitive, routine, and where only one or two-step, non-detailed tasks are required." (TR. 27).

After the VE testified that Mr. Fields could perform three jobs in the national economy, the ALJ asked the VE if her testimony had been consistent with the DOT. (TR. 71). The VE replied affirmatively, but this fact did not relieve the ALJ to investigate regarding a conflict himself. *See Haddock v. Apfel,* 196 F.3d at 1087 ("before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the . . . requirement[s] of identified jobs corresponds with the Dictionary of Occupational Titles, **and** elicit a reasonable explanation for any discrepancy on this point.") (emphasis added); *see also* SSR 00–4p, 2000 WL 1898704, at *2–*4 ("[w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT, the [ALJ] **must** elicit a reasonable explanation for the conflict before relying on the VE . . ." and "[t]he [ALJ]

7

**must** explain the resolution of the conflict irrespective of how the conflict was identified") (emphasis added); *Hackett*, 395 F.3d at 1175 (noting that SSR 00–4p "essentially codifies *Haddock*" and "requires a reasonable explanation for conflicts between a VE's testimony and the DOT relating to any 'occupational information' ") (citation omitted); *Wilson v. Saul*, No. CIV-18-1185-F, 2019 WL 6337444, at *6 (W.D. Okla. Oct. 18, 2019) (rejecting the Commissioner's argument that the VE's testimony regarding a lack of conflict was sufficient simply because the ALJ asked the VE to identify any conflicts with the DOT and the VE failed to do so), *adopted*, 2019 WL 6329363 (W.D. Okla. Nov. 26, 2019); *Stevens v. Commissioner of Social Security*, No. CIV-18-1129-SM, 2019 WL 2476750, at *2 (W.D. Okla. June 13, 2019) (finding the existence of a conflict which required an explanation under SSR 04-p even though the ALJ had asked the VE to advise her of any inconsistency between the VE's testimony and the DOT, and the VE did not indicate any conflict existed); *Kelley v. Saul*, 2019 WL 7293408, at *5 (D.N.M. Dec. 30, 2019) ("mere reliance on the VE's affirmation of consistency is not enough").

In sum, the Court finds that a conflict existed between the RFC and the reasoning level required to perform the jobs the ALJ relied on at step five, which the ALJ failed to resolve. *See supra*, *Hackett*. As a result, the Court concludes that remand is warranted.

**VI.    NO ERROR IN THE ALJ'S CONSIDERATION OF PLAINTIFF'S OBESITY**

At step two, the ALJ deemed Plaintiff's morbid obesity to be a "non-severe" impairment. (TR. 25). In his second allegation of error, Plaintiff argues that the ALJ erred in failing to "properly consider and account for [the obesity's] effects in the hypothetical question and decisional RFC." (ECF No. 7:11). The Court disagrees.

An ALJ "must consider the limiting effects of obesity when assessing a person's RFC" and "explain how [he] reached [his] conclusion on whether obesity causes any limitations." SSR 19-2p, 2019 WL 2374244, at *4 (May 20, 2019). But "[o]besity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairments." *Id.* at *2. An ALJ does "not make general assumptions about the severity of functional effects of obesity combined with another impairment(s)," but instead "evaluate[s] each case based on the information in the case record." *Id.* at *4.

In his argument, Plaintiff cites no evidence supporting the presence of additional limitations caused by obesity. Instead, he merely speculates that "obesity can adversely affect an individual's mental health, as well as physical health" and that his obesity "affects and should be considered with his other proven impairments[.]" (ECF No. 7:13). In the decision, the ALJ considered Plaintiff's obesity to be a non-severe impairment. (TR. 25). The ALJ found the obesity and other impairments "considered singly and together cause [Plaintiff] [no] more than a minimal limitation in his ability to perform basic work activities on a regular and continuing basis." *Id.* The ALJ also stated that he had "considered the entire medical record even when not explicitly discussed,"[2] and the practice in this Circuit is "to take the ALJ at his word." *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009).

Based on the ALJ's consideration of obesity and Plaintiff's failure to address any evidence of limitations as a result of or owing to the obesity, the ALJ did not err in his

---

[2] (TR. 28).

consideration of the issue. *See Rose v. Colvin*, 634 F. App'x 632, 637 (10th Cir. 2015) (affirming where the appellant "point[ed] to no medical evidence indicating that her obesity resulted in functional limitations"); *Cone v. Kijakazi*, 2021 WL 4256471, at *4 (W.D. Okla. Sept. 17, 2021) (finding that the ALJ properly considered Plaintiff's obesity when the ALJ stated that the obesity was non-severe and Plaintiff failed to address any evidence of limitations as the result of the obesity); *Archie D. F. v. Saul*, 2021 WL 1348264, at *9 (N.D. Okla. Apr. 12, 2021) (finding no error in considering obesity where "the ALJ considered 'the entire record,' including Plaintiff's obesity," stated the determination was "[b]ased upon 'a complete and thorough review of the evidence in the file,' "). Thus, the Court finds the ALJ properly considered Mr. Fields' obesity.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on July 31, 2023.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE